**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X
                                                    :
**CAMULDEEN ALLIE,**                                :
                                                    :
      **Petitioner,**                   :      **OPINION AND ORDER**
                                                    :
      **- against -**                   :      **08 Civ. 11082 (SAS)**
                                                    :
**RAYMOND CUNNINGHAM,**                             :
                                                    :
      **Respondent.**                    :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Camuldeen Allie, proceeding pro se, brings this petition for a writ for habeas corpus pursuant to section 2254 of Title 28 of the United States Code ("section 2254"). Allie argues that the denial of his parole violated an alleged agreement made by an Assistant United States Attorney ("AUSA") that Allie would be released after his first parole hearing. For the reasons below, Allie's petition is denied.

## II.    BACKGROUND

        On November 6, 1995, Allie was sentenced to a prison term of fifteen years to life after pleading guilty to Second Degree Murder (New York Penal Law

section 125.25(1)) for the murder of Peter Vernon.[1]  Nine years later, after federal

prosecutors discovered that Vernon's murder was part of a conspiracy, Allie was

asked to cooperate in a federal investigation.  In exchange, AUSA Robert Capers

pledged, *inter alia*, to send a letter to Allie's Parole Board detailing his assistance

to the investigation.[2]  With this pledge, AUSA Capers explained, in writing, that

> the [AUSA's]  Office cannot and does not make a promise
> or representation about the outcome of the Parole Board's
> determination of Mr. Allie's parole eligibility . . . No
> promises, agreements or conditions have been entered into
> other than those set forth in this letter, and none will be
> entered into unless memorialized in writing and signed by
> all parties.[3]

Allie alleges that AUSA Capers verbally assured him that he would be released

after his first parole hearing, but refused to memorialize this assurance because to

do so would somehow undermine Allie's credibility as a witness.[4]  Allie provides

no evidence (other than his own statement) to substantiate this claim.  AUSA

---

[1]     *See* Sentence and Commitment Order, Ex. A to 4/28/09 Declaration
of Assistant Attorney General Lisa Fleischmann, respondent's counsel, in
Opposition to Petition for a Writ of Habeas Corpus ("Fleischmann Decl.").

[2]     *See* 1/3/06 Letter from AUSA Capers to Michael Soroka, petitioner's
counsel, Ex. J to Fleischmann Decl., ¶ 1.

[3]     *Id.* ¶¶ 1, 5.

[4]     *See* Petitioner's Memorandum of Law ("Pet. Mem.") at 6.

Capers sent the letter that he promised to the Parole Board, explaining Allie's

assistance to the federal investigation and subsequent prosecutions resulting

therefrom.[5]

### A.    Procedural History

#### 1.    Parole Board Decision

After serving the minimum term of fifteen years, Allie appeared

before the Parole Board on June 10, 2008.[6]  The Parole Board questioned Allie

about his crime, his plans in the event that he received parole, and his participation

in prison enrichment programs.[7]  Afterwards, Allie addressed the Parole Board and

spoke about his personal growth during his time in prison.[8]  He also alerted the

Commissioners to his assistance in the federal investigation and subsequent

prosecutions.[9]  After reading AUSA Capers' letter detailing Allie's assistance, the

Parole Board noted, "you did provide substantial cooperation to the federal

---

[5]    *See* 5/20/08 Letter from AUSA Capers to the Parole Board, Ex. I to
Fleischmann Decl.

[6]    *See* Transcript of 6/10/08 Parole Proceedings, Ex. C to Fleischmann
Decl., at 1.

[7]    *See id.* at 2-5.

[8]    *See id.* at 8-9.

[9]    *See id.* at 5-8.

3

government."[10]  Allie was denied parole on June 16, 2008.[11]  In its decision, the

Parole Board noted:

> [I]f released at this time . . . your release would be
> incompatible with the welfare of society.  This decision is
> based on the following factors: Your instant offense,
> murder 2nd . . . involved your active participation in the in
> concert [sic] contract killing of your victim.  This offense
> represents your only crime of conviction.  This panel notes
> your positive programmatic participation, including
> completion of ASAT and ART.[12]

In October of 2008, Allie filed a pro se administrative appeal, which has not yet

been decided.[13]

### 2.    State Court Appeal

On November 24, 2008, before the Appeals Unit rendered a decision

on Allie's administrative appeal, Allie filed a petition for a state writ of habeas

corpus in Sullivan County Supreme Court.  Allie claimed that his continued

imprisonment was unconstitutional because it violated his alleged agreement with

---

[10]    *Id.* at 8.

[11]    *See* Parole Board Release Decision Notice, Ex. D to Fleischmann
Decl.

[12]    *Id.*

[13]    *See* 10/20/08 Administrative Parole Appeal, Ex. F to Fleischmann
Decl., ¶ 3.

AUSA Capers.[14]  The state court denied Allie's petition without reaching the

merits of his claim, stating, "A writ of Habeas Corpus does not lie when claims,

even if meritorious, would not result in release from state prison . . . .  Even if

successful, in an Article 78 proceeding,[15] the best [petitioner] could receive is a

new hearing by the Board of Parole not release from state prison."[16]

On March 17, 2009, Allie filed a notice of appeal from the Supreme

Court's denial of the writ.[17]  To this Court's knowledge, Allie has not yet perfected

his appeal.[18]

## III.  LEGAL STANDARD

### A.    Pro Se Petition

"The complaint of a pro se litigant is to be liberally construed in his

---

[14]      *See* 11/24/08 State Writ of Habeas Corpus, Ex. G to Fleischmann
Decl., at 5.

[15]      *See* N.Y. C.P.L.R. § 7803(3) (an Article 78 proceeding is brought,
*inter alia*, to determine whether "a determination was made in violation of lawful
procedure, was affected by an error of law or was arbitrary and capricious or an
abuse of discretion, including the abuse of discretion as to the measure or mode of
penalty or discipline imposed.").

[16]      3/13/09 State Court Decision and Order, Ex. H to Fleischmann Decl.
(footnote added).

[17]      *See* 3/20/09 Notice of Appeal, Ex. M to Fleischmann Decl.

[18]      *See* Respondent's Memorandum of Law in Opposition to the Petition
for a Writ of Habeas Corpus at 13.

favor,"[19] and "read liberally and interpret[ed] to 'raise the strongest arguments [it] suggest[s].'"[20] However, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"[21]

## B.   Section 2254

### 1.   Standard of Review

A federal court can grant a writ of habeas corpus to a state prisoner only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."[22] When reviewing a state court decision within the context of a habeas petition, a federal court "appl[ies] the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."[23] Under the AEDPA standard, a federal court "may grant a writ of habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by

---

[19]   *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

[20]   *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

[21]   *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

[22]   28 U.S.C. § 2254(a).

[23]   *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009).

6

the Supreme Court of the United States.'"[24]  However, when "the federal claim

was not adjudicated on the merits, 'AEDPA deference is not required, and

conclusions of law and mixed findings of fact and conclusions of law are reviewed

de novo.'"[25]  A habeas claim is considered to be adjudicated on the merits "when

[the court] 'states that it is disposing of the claims on the merits and reduces its

disposition to judgment.'"[26]  In order to determine whether a particular claim was

decided on the merits by the state court, the federal court "examines (1) the state

court's opinion, (2) whether the state court was aware of a procedural bar, and (3)

the practice of state courts in similar circumstances."[27]

### 2. Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may

not be granted unless "the applicant has exhausted the remedies available in the

courts of the State."[28]  In order to satisfy the exhaustion requirement, a prisoner

must have "'fairly presented to an appropriate state court the same federal

---

[24]    *Id.* (quoting 28 U.S.C. § 2254(d)).

[25]    *Id.* (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

[26]    *Spears*, 459 F.3d at 203 (quoting *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003)).

[27]    *Id.* (citing *Jiminez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006)).

[28]    28 U.S.C. § 2254(b)(1)(A).

constitutional claim that he now urges upon the federal courts,'"[29] either in the

form of "explicit constitutional arguments" or simply by "alleging facts that fall

'well within the mainstream of constitutional litigation.'"[30] The claim must be

presented to "the highest state court from which a decision can be had."[31]  Prior to

the AEDPA, district courts were required to dismiss any petition containing

unexhausted claims.[32]  Under the AEDPA amendments, however, district courts

may deny a petition on the merits "notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State."[33]

### C.    Parole and Due Process

The Supreme Court has held that "'[t]here is no constitutional or

inherent right of a convicted person to be conditionally released before the

expiration of a valid sentence'" when a parole scheme does not create a legitimate

---

[29]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[30]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[31]     *Daye*, 696 F.2d at 190 n.3.

[32]     *See Rose v. Lundy*, 455 U.S. 509, 522 (1989).

[33]     28 U.S.C. § 2254(b)(2).

expectation of parole.[34]  A parole hearing itself comports with due process when
the inmate is afforded "an opportunity to be heard."[35]  A denial of parole is given
in accordance with due process when the inmate is informed "in what respects he
falls short of qualifying for parole."[36]

## 1. New York's Parole Scheme

Because "the Second Circuit has held that 'the New York parole
scheme is not one that creates in any prisoner a legitimate expectancy of release,'
. . . a plaintiff 'has no liberty interest in parole, and the protections of the Due
Process Clause are inapplicable.'"[37]  A New York State inmate's liberty interest in
parole is "'limited to not being denied parole for arbitrary or impermissible
reasons.'"[38]  Denial of parole is not arbitrary "when the Parole Board relies on the

---

[34]     *Romer v. Travis*, No. 03 Civ. 1670, 2003 WL 21744079, at *5
(S.D.N.Y. July 29, 2003) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr.
Complex*, 442 U.S. 1, 7 (1979) (explaining that there is no inherent right to parole
when a parole scheme does not create a legitimate expectation of parole)).

[35]     *Greenholtz*, 442 U.S. at 16.

[36]     *Id.*

[37]     *Boddie*, 285 F. Supp. 2d at 428 (quoting *Barna v. Travis*, 239 F.3d
169, 171 (2d Cir. 2001)).

[38]     *Id.* (quoting *Brown v. Thomas*, No. 02 Civ. 9257, 2003 WL 941940,
at *1 (S.D.N.Y. Mar. 10, 2003)).

factors defined by New York statute."[39]

Rather than creating an entitlement to release, New York State's "parole provisions give the parole commissioners discretion to consider carefully the circumstances of each individual case."[40]  In exercising their discretion, parole commissioners are directed to consider "if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and if his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law."[41]  In addition, the following factors (among others) must be considered:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates . . . (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services . . . ; (v) any statement made to the board by the crime victim

---

[39]    *Romer*, 2003 WL 21744079, at *6 (citing *Davis v. Thomas*, 256 F. Supp. 2d at 190, 191 (S.D.N.Y. 2003)).

[40]    *Id.* (citing *Barna*, 239 F.3d at 171).

[41]    N.Y. Exec. Law § 259(i)(2)(c)(A).

or the victim's representative.[42]

In many cases, a parole board must also consider:

> (i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.[43]

## D.   Certificate of Appealability

A district court may grant a certificate of appealability allowing a habeas petitioner to appeal the denial of his petition with respect to any of petitioner's claims only if a petitioner makes a substantial showing of the denial of a constitutional right.[44] A substantial showing requires only that a petitioner demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were

---

[42]      *Id.*

[43]      *Id.* § 259(i)(1)(a).  A parole board must consider these factors when a court, and not a parole board, set the minimum term an inmate must serve. *See* N.Y. Exec. Law § 259(i)(2)(c)(A).

[44]      *See* 28 U.S.C. § 2253(c)(2).  *See also Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003).

'adequate to deserve encouragement to proceed further.'"[45]

## IV.   DISCUSSION

### A.   Allie's Petition Is Not Based on a Constitutional or Federal Claim

Allie argues that his unwritten agreement with AUSA Capers should be honored and therefore requests specific performance of the alleged agreement — release from prison on parole.[46] He mistakenly relies upon case law establishing a due process liberty interest in the performance of plea agreements, incorrectly analogizing his agreement to a plea agreement. When a defendant pleads guilty in exchange for a concession from the prosecution, a liberty interest is implicated and process is due. There was no liberty interest implicated in Allie's agreement (either written or alleged) with AUSA Capers. Allie cooperated with federal prosecutors in exchange for their promise, *inter alia*, of a positive letter to his Parole Board — he was never charged with a federal crime and he certainly did not plead guilty to one. Because there is neither a liberty interest implicated in the performance of this agreement nor in the right to parole itself (beyond the liberty interest in not being denied parole for arbitrary or

---

[45]   *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[46]   *See* Pet. Mem. at 2.

12

impermissible reasons), Allie has not stated constitutional grounds for his petition. Even assuming, *arguendo*, both that AUSA Capers promised Allie that he would be released after his first parole hearing and that this parol evidence would be admissible, Allie's petition must be denied because he does not allege a constitutional or federal claim.

**B.    The Parole Board's Parole Denial Was Neither Arbitrary Nor Capricious**

Allie argues that he was denied due process at the parole hearing in that the Parole Board did not honor AUSA Capers' alleged promise.  However, a due process liberty interest is only implicated with regard to New York State's parole scheme if a parole board acts arbitrarily or capriciously in denying parole. Allie's Parole Board did not act arbitrarily or capriciously — the Parole Board's decision relied upon the statutory factors enumerated in section 259.  Moreover, Allie was afforded all the rights due him, specifically the right to be heard and the right to be told the reasons for the Parole Board's decision.  Therefore, the instant petition does not implicate any alleged constitutional violation and is not cognizable on habeas review.  Furthermore, recognition of the alleged agreement between Allie and AUSA Capers, and its impact upon the Parole Board decision denying Allie's parole, are state court matters which this Court will not second

13

guess as a matter of comity.[47]

## V.    CONCLUSION

For the foregoing reasons, Allie's petition for a writ of habeas corpus is denied.  I decline to issue a certificate of appealability, because Allie has not made a substantial showing of the denial of a constitutional right.  The Clerk of the Court is directed to dismiss this Petition and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 30, 2009

---

[47]      While Allie's claim is unexhausted, it would be denied in any event, under either *de novo* or AEDPA deferential review, because it is clearly without merit.

14

## - Appearances -

**Petitioner (Pro Se):**

Camuldeen Allie
# 95-A-8826
Woodbourne Correctional Facility
99 Prison Road
Woodbourne, NY 12788

**For the Respondent:**

Alyson J. Gill
Lisa E. Fleischmann
Assistant Attorneys General
120 Broadway
New York, NY 10271
(212) 416-8802